ANNIE CULLEN, MARGARET C. DOWLING and FLORENCE N. REILLY, as Executors, etc., of JOHN CULLEN, Deceased, et al., Plaintiffs, v. WILLIAM E. WALSH and GERTRUDE WALSH, as Administrators de Bonis Non, etc., of PETER N. PHILLIPS, Deceased, et al., Defendants.

(Supreme Court, New York Special Term, October, 1916.)

Fraud — when judgment creditors may unite in action to set aside conveyance.
Pleading — demurrer — misjoinder.
Motions and orders — when motion to vacate injunction ex parte denied — res adjudicata.

It is well settled that judgment creditors holding distinct and several judgments against a common debtor may unite in an action to set aside a conveyance made by him in fraud of their rights, and if successful the court may hear and determine the rights of the respective plaintiffs to any fund involved.

Where a complaint alleged a cause of action for fraud and the demand for general relief was the application of a fund

in the hands of the administrator of the judgment debtor to the payment of plaintiff's judgment, a demurrer to the complaint on the ground of misjoinder of causes of action must be overruled.

Where a motion *ex parte* to vacate an injunction was denied, the order continuing the injunction is *res adjudicata* as to the sufficiency of the complaint on demurrer thereto on said ground.

DEMURRER to complaint.

Daniel Daly, Albert R. Hager and Katz & Sommerich, for plaintiffs.

Coudert Brothers, for defendants.

DELEHANTY, J.   Defendants demur to the complaint herein on the grounds of misjoinder of parties plaintiff, that causes of action are improperly united, and that the facts alleged are insufficient to constitute a cause of action.   This is a controversy among the representatives of three judgment creditors concerning the application of a fund in the hands of the administrators of a judgment debtor.   It appears from the complaint that in June, 1896, one Mary McDonough duly recovered a judgment against the intestate for $5,327; that said judgment was assigned to one Margaret Phillips, and from her to defendant John M. Phillips, who in turn assigned the same to R. Emmet Walsh, its present holder.   It further appears that in December, 1897, one John Cullen obtained a judgment for $1,027 against the decedent and Margaret Phillips, and that in March, 1899, the firm of Candee & Smith also recovered a judgment against the same parties for $3,367; that executions were issued upon each of these judgments, and the same returned wholly unsatisfied.   It is alleged that after the entry of the foregoing judgments the dece-

dent or his estate came into funds which are now
ready for distribution; that in an accounting proceed-
ing before the surrogate of Queens county it was held
that the judgments of the plaintiffs, who claim owner-
ship through Cullen and Candee & Smith, respectively,
were valid claims against the estate of the decedent;
that the Surrogate's Court, because of want of juris-
diction so to do, refused to pass upon the questions
arising between the parties hereto as to the respective
rights of the plaintiffs and the defendant R. Emmet
Walsh to the payment of their respective claims under
the aforesaid judgments, and on appeal from the
decree of said Surrogate's Court, which provided for
the payment of the said McDonough judgment, the
said decree was modified by the Appellate Division of
this court in the second department by inserting a
provision that the same was " without prejudice to the
bringing in equity a new suit which appellants (these
plaintiffs) may be advised to institute." The com-
plaint further alleges facts tending to show that in the
transfer of the McDonough judgment there is and was
a scheme to cheat and defraud the holders of the Cul-
len and Candee judgments, and that the defendant
administrators are now about to pay over the fund to
R. Emmet Walsh, their brother-in-law, who is not
financially responsible. The holders of the Cullen and
the Candee & Smith judgments have united as parties
plaintiff in this action for the purpose of reaching the
fund in question and of determining the rights of the
respective judgment creditors in connection therewith.
An injunction was granted *ex parte* at a Special Term
of this court, restraining the defendants from paying
out the fund pending the trial of this case. Thereafter
upon a contested motion the injunction *pendente lite*
was continued, with leave to the administrators to pay
the fund over to R. Emmet Walsh upon his giving

security to indemnify the plaintiffs in the event of their recovery upon the trial. According to the well-established rule in this state, judgment creditors holding distinct and several judgments may unite in an action to set aside a conveyance by the common debtor made in fraud of their rights as creditors. *White's Bank of Buffalo* v. *Farthing,* 101 N. Y. 344. In the early case of *Brinkerhoff* v. *Brown,* 6 Johns. Ch. 139, it was held that different judgment creditors may unite in one bill against their common debtor, the object of all of them being the same, for the aid of the court to enforce their liens at law. There the court stated (p. 151): "It is an ordinary case in this Court, for creditors to unite, or for one or more, on behalf of themselves and the rest, to sue the representative of their debtor, in possession of the assets, and to seek an account of the estate. This is done to prevent multiplicity of suits, a very favorite object with this Court." This doctrine has been repeatedly quoted as the law of the state. Defendants' citation from *White's Bank* case, in 23 Weekly Digest, 176, is not complete. That case is not authority for the proposition that if the plaintiffs succeed they would be entitled "to a judgment setting aside the conveyance merely," but for the proposition that "the court may compel the fraudulent grantees to convey to a receiver to be sold to satisfy the plaintiffs' judgment." In other words, a court of equity in a case like this may hear and determine the rights of the respective parties in and to the fund in question. See *Jones* v. *Conlon,* 48 Misc. Rep. 174; *Wood* v. *Sidney S. B. & F. Co.,* 92 Hun, 22, 25; *Smith* v. *Schulting,* 14 id. 52. The contention that there is a misjoinder of causes of action cannot be sustained. Plaintiffs are judgment creditors having claims against the estate which are perfectly established, and are not the subject of litigation in this suit.

The general relief demanded by the complaint is the application of the fund in the hands of the admnistrator to the payment of the plaintiffs' judgments. The subject of the complaint and of the relief and the only matter in litigation is the fraud alleged against the defendants. A recent case decided in this department reiterates the law laid down in earlier decisions upon the points now under consideration. In *Hatch* v. *Heinze*, 172 App. Div. 675, 679, it is stated: "The case of *Reed* v. *Stryker* (4 Abb. Ct. App. Dec. 26), decided in 1858, held that judgment creditors might join in one bill transferees who were not in privity with each other. The court on page 31, said: ' The object of the suit is single. The plaintiffs, defeated in the collection of their debts by the ordinary process of law, now seek to reach the property of their debtor in the hands of those to whom he has dishonestly conveyed it. However numerous the persons with whom the property has thus been deposited, however distinct the transactions by which the debtor has sought to place it beyond the reach of his creditors, or however widely it may have been scattered in the execution of this purpose, the effort to recover the property and have it applied to the satisfaction of his debts embraces but a single cause of action.' That case has been followed by the lower courts and cited with approval, but some of the cases have intimated that in order to join transferees all must be privy to one scheme of disposition. This we believe to be a misconception. It is true that in order to join several parties in one action the main issues of fact and law must be common to all, but we do not consider it necessary that each transferee must be privy to every transfer. All are bound together sufficiently for the purposes of an action like this if the transfers are made by the transferor under the influence of a contin-

uing intent to defraud. To quote the language of Chancellor Kent, in *Brinkerhoff* v. *Brown,* 6 Johns. Ch. 139, which was adverted to with approval in the above mentioned case of *Reed* v. *Stryker*: ' It * * * appears from the bill that all the defendants were not jointly concerned in every injurious act charged. There was a series of acts on the part of the persons concerned in the company, all produced by the same fraudulent intent and terminating in deception and injury to the plaintiffs. The defendants performed different parts in the same drama; but it was still one piece — one entire performance, marked by different scenes.' '' This quotation goes much further than is necessary for the purpose of determining the points raised in this case; nevertheless it shows the consistent attitude of the courts in actions to recover property alleged to be fraudulently distributed to defeat judgment creditors. I am clearly of the opinion that there is but one cause of action set forth in the complaint, and that the demurrer on the grounds of misjoinder of causes of action cannot be sustained. As to the proposition that the complaint does not state facts sufficient to constitute a cause of action, I am inclined to hold that such a question is *res adjudicata*. In *Williams* v. *Montgomery,* 148 N. Y. 524, in an action for an injunction, similar to a certain extent to the case at bar, it was held that the dismissal of the complaint upon the ground that it did not constitute a cause of action is a final decision that the plaintiff was not entitled to the preliminary injunction. As above stated, it was determined upon a contested motion that the complaint was sufficient to support a preliminary injunction. No appeal was taken, apparently. To decide now that the complaint is insufficient would, in effect, nullify the former order entered herein. Where

the right to an injunction depends upon the nature of the action, and an injunction order is applied for *ex parte* at Special Term, it cannot be expected that the justice presiding there should go into the sufficiency of the complaint with the same elaboration as when that question is raised on demurrer. On a motion to vacate such an injunction order thus issued, the question as to whether or not the complaint states facts sufficient to constitute a cause of action is not regarded as *res adjudicata,* and it is the duty of the court to examine the complaint, and if it is not good the order cannot be sustained. *Loewenstein* v. *Loewenstein,* 114 App. Div. 65; *Sanders* v. *Ader,* 26 id. 176; *Blakeslee* v. *International Motor Co.,* 161 id. 624. In this case the injunction was originally granted in connection with an order to show cause, and thereafter the matter was brought on in the form of a contested motion as to whether or not the injunction should be continued. Both sides were heard and the injunction was continued, as stated above. It seems to me that where the sufficiency of the complaint is essential to the granting or continuance of the injunction, and both sides have had ample opportunity to present their arguments upon the subject, and have done so, and the injunction is then granted or continued, the defendant cannot thereafter review the decision in the same forum by demurring to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The proper remedy in such a case is to take an appeal. Regardless of the question of *res adjudicata,* however, the complaint clearly sets forth a good cause of action. Demurrer is therefore overruled.

Demurrer overruled, with ten dollars costs.